**JS6**

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3240 | **DATE** | 9/5/2001 |
| **CASE TITLE** | | Wash vs. Village of Bellwood | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order.  Defendants' motion for summary judgment is granted in its entirety and this action is dismissed with prejudice as to both defendants.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

SEP 0 6 2001
date docketed

docketing deputy initials

9/5/2001
date mailed notice

**Document Number**

*15*

SN
courtroom deputy's initials

CD-7
FILED FOR DOCKETING
0 SEP -5 PM 4: 10

Date/time received in central Clerk's Office

SN
mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT WASH,                    )
                                )
                Plaintiff,      )
                                )
        v.                      )        No.  00 C 3240
                                )
VILLAGE OF BELLWOOD, et al.,    )
                                )
                Defendants.     )

MEMORANDUM OPINION AND ORDER

Robert Wash ("Wash") has sued Village of Bellwood

("Village") Police Officer Robert Frascone ("Frascone") and

Village itself under 42 U.S.C. §1983 ("Section 1983") and under

Illinois common law.  Wash apparently[1] charges Frascone under

Section 1983 with three violations of his Fourth Amendment right[2]

to be free from unreasonable seizures:  one by Frascone having

arrested Wash on December 2, 1998, a second by his having

arrested Wash on January 8, 1999 and a third by his having

---

[1] "Apparently" is used advisedly, for Wash's threadbare
submissions are not at all clear on that score.  For one thing,
his two-page responsive memorandum is devoid of any citation to
the record or legal authority.  Nor has Wash provided any
individualized treatment of his five claims, so that it is
difficult to discern their factual or legal bases.  But because
defense counsel has provided a fair picture of Wash's possible
avenues of recovery, and because Wash has not objected to that
assessment, the analysis here proceeds on that basis.

[2] As always, this opinion adheres to the conventional and
convenient (though technically imprecise) practice of referring
to the underlying Bill of Rights provision (which of course
imposes limitations only on the federal government) rather than
to the Fourteenth Amendment (which applies to state actors and
has been construed to embody such Bill of Rights guaranties).

wrongfully imprisoned Wash after the January 8 arrest. Wash also

charges Frascone with several state law claims: (1) malicious

prosecution, (2) abuse of process and retaliatory prosecution,

(3) tortious interference with contract and (4) assault and

battery. But Wash does not explain at all how he seeks to hold

Village liable for any of his alleged injuries.

Frascone and Village have now filed a joint Fed. R. Civ. P.

("Rule") 56 summary judgment motion, and both sides have

complied--at least nominally, for Wash's submission is so

impoverished that his action might almost qualify for dismissal

for want of prosecution--with this District Court's LR 56.1.[3] For

the reasons set out in this memorandum opinion and order, the

motion is granted in its entirety and this action is dismissed

with prejudice as to both defendants.

## Summary Judgment Standards

Familiar Rule 56 principles impose on parties moving for

summary judgment the burden of establishing the lack of a genuine

issue of material fact (<u>Celotex v. Catrett</u>, 477 U.S. 317, 322-23

---

[3]  LR 56.1 is designed to facilitate the resolution of Rule
56 motions by calling for evidentiary statements and responses to
such statements (in each instance with record citations), thus
highlighting the existence or nonexistence of factual disputes.
This opinion cites to the Frascone-Village LR 56.1(a)(3)
statement as "F-V St. ¶--" and to Wash's LR 56.1(b)(3)(B)
responsive statement as "W. St. ¶--" (though wherever Wash has
admitted a Frascone-Village statement, an "F-V St. ¶--" citation
obviously suffices). This opinion employs the same "F-V"
abbreviation when referring to the Frascone-Village exhibits.

(1986)).  For that purpose this Court must "read the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (St. Louis N. Joint Venture v. P & L Enters., Inc., 116 F.3d 262, 265 n.2 (7th Cir. 1997)).  As with every summary judgment motion, this Court accepts nonmovant Wash's version of any disputed fact.

## Facts

In November 1998 Wash was a Village resident who worked as a probationary officer with the Cook County Sheriff's Office (F-V St. ¶¶1, 2).  In that month Wash was involved in two non-job-related confrontations (F-V St. ¶¶11, 26), each of which eventually led to an arrest by Frascone--once on December 2, 1998 and then again on January 8, 1999 (F-V St. ¶¶10, 43, 48).[4]  Wash claims that both of those arrests were unlawful and that he ended up losing his probationary employment because, during his jailing that followed the second arrest, he was wrongfully denied a phone call that would have enabled him to notify his supervisor of his absence.  Because the key issue is whether those arrests were supported by probable cause, it is necessary to examine each of the episodes and the ensuing arrests in some detail.

---

[4]  Because most of the operative events took place during 1998, dates referred to hereafter without a year designation are 1998 dates.

3

## Wash's Two November Confrontations

On November 11 Wash had a dispute with UPS truck driver Thomas Murphy ("Murphy")(F-V St. ¶11). Because Murphy had driven past a designated delivery address, he tried to return to the right address by putting his truck into reverse in the wrong direction on a one-way street (F-V St. ¶¶15-16). That compelled Wash, who was driving behind Murphy, also to throw his car into reverse to avoid hitting the truck (F-V St. ¶16).

After Murphy had stopped the truck to make his delivery, Wash parked his car, got out and approached Murphy (F-V St. ¶17; Wash Dep. 129). During the confrontation that followed (about which Murphy and Wash have provided different accounts), Wash identified himself as a Cook County Deputy Sheriff and showed Murphy his badge (F-V St. ¶18). When they had finished, Murphy saw Wash get into a vehicle that Murphy described as a purplish or blue GMC Jimmy or Chevy Blazer and drive away (F-V St. ¶19). Murphy drove to the Village Police Department and reported the incident to Officer Anthony Gatewood ("Gatewood") (F-V St. ¶20).

Gatewood completed a narrative incident report that contains the basic details of Murphy's version of what had happened (F-V Ex. F, with explanatory brackets replacing shorthand symbols used in the report):

> [Reporting officer] responded on said date, time, at [Bellwood Police Department]. Ref: A citizen complaint. Upon arrival, [reporting officer] spoke with said complainant who advised that while delivering packages in

4

the location as described above, he was accosted by a [male black] unknown offender who displayed a badge, and identified himself as a Cook County Sheriff. Subsequently, said offender grabbed the complainant by his jacket, and threw him against the side of his delivery vehicle. Said offender was driving a purple sport utility vehicle, possibly a GMC "Jimmy" or Chevy "Blazer." The offender was disgruntled about the manner in which the complainant was driving which precipitated the altercation. Said complainant will sign complaints.

There is no indication in the record that Wash himself ever reported the incident to the Village Police Department, so that the Village police did not get Wash's version of the event.

Wash's second encounter came on November 17, less than a week later (F-V St. ¶26). At that time Marcus Wells ("Wells") and Vincent Laws ("Laws") came along while Wash was standing outside of his son's home (F-V St. ¶24). According to Wash, they threatened him because he had reported them to the police for selling narcotics two days earlier (Wash Dep. 68). Although the accounts of that episode differ considerably, it is undisputed that Wash pulled out his handgun and that at least one round was "discharged"[5] from his weapon (F-V St. ¶27; Wash Dep. 71).

Immediately after the shot was fired, Village police officers arrived on the scene (F-V St. ¶30). They handcuffed Wash and took him to the Village Police Station (id.). Officer

---

[5] That use of the passive voice is necessary because of Wash's deposition testimony, in which he twice failed to answer the direct question whether the weapon discharged accidentally. Once his response (or nonresponse) was "The weapon discharged" (Wash Dep. 71). When the question was repeated, he gave another nonresponse: "I had my hand on the trigger" (id.).

Jack Bridson ("Bridson") was the reporting officer and prepared this report of the differing versions of the incident (F-V St. ¶31; F-V Ex. L, reproduced verbatim except for explanatory bracketed material):

> [Reporting officer] asked the offender [Wash] what occurred, and he advised that he was standing on the sidewalk in front of his son's apartment building at 635 Bellwood Ave., when he observed Marcus Wells, and Vincent Laws walking down the sidewalk toward him. At this time, the offender stepped out of the way so that the subjects could pass by, during which time, Vincent Laws stated "This is for the arrest mother fucker," and punched the offender on the left side of his face, knocking his glasses off. Both subjects were still standing within 5-10 feet of the offender, at which time, he drew his weapon and fired one round into the air to scare the subjects, and both subjects fled. According to Marcus Wells, both him and Vincent Laws were walking past 635 Bellwood Ave, when Vincent Laws began to make a statement to the effect that they have been labeled as drug dealers. But before he could finish talking, the offender swung at Laws in an apparent attempt to punch Laws, but was unsuccessful. At this time, the offender drew his weapon from its holster, pointed it at Laws, and ordered him to get on the ground. Laws then turned and started to run [eastbound] on St. Paul Ave, at which time, the offender lifted his weapon to shoulder level, and discharged one round in the direction of Laws. It is unknown if Laws was struck or not by the discharged round. According to Dep. Mshl. Williams #395, he and a fellow street dept. employee (Miller, Flozell [male black], 12-22-79) were sitting in a vehicle directly across the street from the above location, and observed the offender and the two other [male blacks] standing there, and observed Wells and Laws approach the offender. Laws and the offender appeared to become involved in a verbal altercation, during which time, he heard the offender shouting at Laws to get on the ground. He then observed Laws running [eastbound], the offender followed him for a couple of steps, then drew his weapon. The offender then brought the gun up to chest/shoulder level, appearing to sight the weapon, and fired one round in the direction of Laws. Miller's story is the same as Williams' version. No signs of injury were visible to the offender's face. [Assistant States Attorney] Sporano was contacted, and came to [Bellwood Police Department] to interview the offender,

Wells, and Williams.  The offender's supervisor, Capt. Mallo
was also contacted.  The offender and Wells were both
released without charges, due to being unable to locate the
victim.

As Bridwell's report reflects, Wash was not charged with any

offense on November 17 only because Laws could not be located.

Frascone's Involvement

Shortly after that second incident, Frascone began to

investigate both occurrences (F-V St. ¶¶36, 40).  Frascone viewed

Wash as a possible suspect in both investigations based on this

information (quoted from F-V St. ¶40):

> 1.  Both incidents (the discharge of the firearm and
> the battery) involved an off duty Cook County Corrections
> officer;
>
> 2.  The fact that the Cook County Corrections officer
> had a weapon on him;
>
> 3.  The age, gender and physical description of the
> Cook County Corrections officer; and,
>
> 4.  The fact that a vehicle registered at Robert Wash's
> address, 515 Linden, generally matched the description of
> the vehicle given by Thomas Murphy.

Although the inquiries overlapped in time, they will be discussed

separately for greater ease of understanding.

First, as to the shooting incident, Frascone reviewed

Officer Bridson's report a few days after November 17 (F-V St.

¶36), and he later discussed the incident with the two

eyewitnesses identified in the report:  Percy Williams

("Williams") and Flozell Miller ("Miller").  Both of them

confirmed the information contained in Officer Bridson's report

(F-V St. ¶37).[6]  Frascone also discussed the incident with Village Chief of Police Greg Moore ("Moore") (F-V St. ¶38).  Frascone called Wash on several occasions in an attempt to speak with him about the shooting, but he was not able to reach him (F-V St. ¶42).

On or about November 24 Frascone asked Chief Investigator Henry Barsch of the Cook County Sheriff's Office for a photograph of Wash (F-V St. ¶41).  Then on December 2 Wash (who had received the several phone messages from Frascone) presented himself at the Village Police Department and asked to see Frascone  (F-V St. ¶¶42, 43; Wash Dep. 97-98).  When Frascone met with Wash, he first identified himself and took Wash back to an interview room, then gave Wash a preprinted Miranda warnings form (F-V St. ¶43).  Wash said he would not answer any questions without his attorney present (id.).  Frascone then told Wash he was under arrest for discharging his firearm in public on November 17 (id.).  Frascone

---

[6]  In that respect W. St. ¶37 responds only this way:

> While paragraph 37 correctly summarizes the testimony of ROBERT FRASCONE the alleged eye witness Percy Williams <u>did not</u> see the incident according to his fellow witness Flozell Miller (Ex. A. at 9, 16).

That, however, is really irrelevant to the present Rule 56 motion for two reasons.  For one thing, the asserted inconsistency emerged through discovery in this litigation--and of course the existence of probable cause must be based on the situation as known to the arresting officer when he acted, not judged by hindsight.  And second, even if Frascone had been aware of any such inconsistency, the later discussion shows the clear existence of probable cause based on Wash's own admission.

ordered Wash to stand up, spun him around on the wall and searched him, performing a pat-down search on the outside of his clothing (id.). Wash was then charged with violating an ordinance by unlawfully discharging his weapon within the Village limits (id.). After Wash was booked and given an I-bond, he left the police station (Frascone Dep. 27).

As for the investigation of the alleged November 11 battery, Frascone interviewed Murphy on December 3 (F-V St. ¶45). During that interview Murphy viewed a photograph of Wash and positively identified Wash as the person who had assaulted him (id.). After obtaining that positive identification, Frascone called Wash and eventually reached him by telephone, telling Wash that he wanted to speak to him about another incident (Wash Dep. 108). Wash told Frascone that his lawyer had advised him not to have any conversations with the police (id.). On December 29 Frascone drew up an arrest warrant charging Wash with a battery on Murphy (F-V St. ¶46). At some point before January 8, 1999 the Circuit Court of Cook County issued the warrant (F-V St. ¶47).

On that January 8 date Wash was at the courthouse in Maywood, Illinois, where Complaint ¶3 says he was attending to an unrelated matter that required his attendance there. Frascone and another Village police officer took Wash into custody at the courthouse and placed him under arrest (id. and F-V St. ¶48). Wash was taken to the Village Police Department and placed in the

lockup there (Wash Dep. 117).  When Wash then asked to make a phone call, Frascone denied that request (id. at 117-18).[7]

While Wash was in custody that day, an investigator from the Sheriff's Office came to visit him and told him that he was being fired from his job (F-V St. ¶67).  Wash was given an exit interview and signed termination papers (id.).  Although Wash claims he was fired because he did not call his supervisor to alert him that he would not be able to attend work because of his incarceration, Wash has essentially admitted that his firing was not due to the fact that he did not call in to work that day (compare F-V St. ¶64 and W. St. ¶64).[8]  Moreover, F-V St. ¶¶50-64

---

[7]  Frascone and Village do not admit that assertion about the denial of a phone call (F-V St. ¶64 n.1), but under Rule 56 standards this opinion accepts Wash's version.  As the later discussion reflects, however, that does not save the state law abuse of process claim as to which that might have been relevant.

[8]  Here is F-V St. ¶64:

> Robert Wash's termination was not due to the
> fact that he was not allowed to make a phone
> call to his supervisor after his arrest on
> January 8, 1999.

And here is how Wash responds in W. St. ¶64:

> Paragraph 64 correctly states the testimony
> of Henry Barsch.

That of course does not equate to a denial of F-V St. ¶64--and even if it did, it would still be deemed an admission.  Under LR 56.1 any purported denials that do not contain supporting record citations are treated as insufficient to create a factual dispute--hence as the equivalent of admissions (see, e.g., this Court's opinion in Bank of Tokyo-Mitsubishi, Ltd. v. Malhotra, 131 F. Supp.2d 959, 960 (N.D. Ill. 2000), citing Brasic v.

conclusively demonstrate (1) that Wash was fired for violating four General Orders governing corrections officers (including Wash) and (2) that the termination decision was made before January 8, 1999.

## Section 1983 Claim

Even though not expressly labeled as such, Count I runs against Frascone and Village and plainly rests on Section 1983. And although Wash does not specify what federal right was assertedly violated by his claimed false arrest and imprisonment, that claim clearly sets out an asserted violation of his Fourth Amendment right not to be arrested without probable cause (see Schertz v. Waupaca County, 875 F.2d 578, 582 (7th Cir. 1989)). In Fourth Amendment terms any arrest is deemed reasonable "so long as the police are doing no more than they are legally permitted and objectively authorized to do" (United States v. Woody, 55 F.3d 1257, 1268 (7th Cir. 1995), quoting United States v. Trigg, 878 F.2d 1037, 1041 (7th Cir. 1989)).

In turn Trigg, id. has framed that inquiry in terms of two objective factors:

> First, did the arresting officer have probable cause to believe that the defendant had committed or was committing an offense. Second, was the arresting officer authorized by state and or municipal law to effect a custodial arrest for the particular offense.

Application of that test to each of the contested arrests

---

Heinemann's Inc., 121 F.3d 281, 284 (7th Cir. 1997)).

confirms that both were eminently reasonable.  This opinion
addresses them in turn.

December 2 Arrest

Did Frascone have probable cause to believe that Wash had
unlawfully discharged his weapon within Village limits?  Probable
cause to arrest exists for a law enforcement officer when "the
facts and circumstances within [his] knowledge and of which [he
has] reasonably trustworthy information [are] sufficient to
warrant a prudent [person] in believing that the [suspect] had
committed or was committing an offense" (Booker v. Ward, 94 F.3d
1052, 1057 (7th Cir. 1996), quoting as its ultimate source Beck
v. Ohio, 379 U.S. 89, 91 (1964)).  By the time Wash presented
himself at the Village Police station that day, Frascone had:

> 1.  read Bidwell's incident report, which not only
> provided several eyewitness accounts that Wash had fired his
> weapon on November 17 but also contained Wash's own
> admission that he had fired a warning shot; and

> 2.  interviewed eyewitnesses Miller and Williams, who
> confirmed their accounts as given in Bidwell's report.[9]

Wash has pointed to no evidence that was or should have been

---

[9]  Caselaw teaches that an officer's reliance on a direct
eyewitness account carries special persuasiveness for a
determination of probable cause (see, e.g., this Court's opinion
in Nielsen v. Village of Lake in the Hills, 948 F.Supp. 786, 792
(N.D. Ill. 1996), quoting Gramenos v. Jewel Cos., 797 F.2d 432,
439 (7th Cir. 1986)).

available to Frascone at the time of the arrest that would have given him any reason to doubt that Wash had unlawfully fired his gun in public. Even if Frascone had been able to discover at that time the inconsistencies between the accounts of Williams and Miller that later came out during discovery, and even if those inconsistencies had torpedoed their credibility--though both of those hypotheses are without evidentiary support--Wash has no answer for the fact that Bidwell's report contained Wash's own statement that he had fired a warning shot. That uncontradicted statement was enough to give Frascone probable cause to believe that Wash had committed a violation of the Village ordinance prohibiting public discharge of a firearm.

That leaves only the second question: whether Frascone was authorized by state or municipal law to effect a custodial arrest. On that score 725 ILCS 5/107-2(1)(c) expressly authorizes an officer to make a custodial arrest where he or she has probable cause to believe that an offense has occurred. Thus application of the two _Trigg_ factors confirms that the December 2 arrest was justified.

Although Wash claimed in his deposition that he was "cleared" of the November 17 shooting incident (Wash Dep. 99), that characterization has no support in the record--and more importantly, it would not reflect upon what Frascone reasonably believed at the time of the arrest. In that respect, Bidwell's

13

report reflects that Wash was not charged for the November 17 shooting solely because no complaining witness was available, and Frascone's testimony confirmed that had been his understanding (F-V St. ¶35).

## January 8 Arrest

As for the January 8 arrest, there too the record leaves no doubt as to its justification. Because Frascone made that arrest after procuring an arrest warrant, he "is immune from a suit for damages unless it can be shown that the 'warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable'" (Neiman v. Keane, 232 F.3d 577, 579-80 (7th Cir. 2000), quoting Malley v. Briggs, 475 U.S. 335, 344-45 (1986)).

Nothing about Frascone's procurement of the warrant brings him even close to having fallen short of that low threshold. In addition to the factors enumerated above in the Frascone's Involvement section of this opinion, Murphy identified Wash as the perpetrator of the battery after having viewed Wash's photograph during a December 3 interview with Frascone. In light of those facts, and with no conflicting information that should have led Frascone to a different conclusion, it cannot be disputed that the warrant was properly obtained and that the

arrest was properly conducted.[10]

At various points Wash attempts to create a genuine issue of material fact by speculating as to what motives Frascone and other Village Police Officers may have had in arresting him (W. Mem. 3 alleges that Frascone was "out to get" Wash). But where as here an arrest is objectively justified, any malicious motives that the arresting officer might have toward the defendant are irrelevant because of immunity principles (Schertz, 875 F.2d at 582).

Because Frascone violated no federal right in his treatment of Wash, Village a fortiori faces no possible municipal liability for any "custom or policy" leading to Frascone's actions (Nielsen, 948 F. Supp. at 796). Hence Count I is dismissed as to both defendants.

### State Law Claims

That leaves for consideration only Wash's four state law claims, all advanced under the supplemental jurisdiction auspices of 28 U.S.C. §1367(a). Most frequently a federal court will relinquish jurisdiction over such supplemental state law claims when the federal claims are dismissed before trial (see, e.g., Rothman v. Emory Univ., 123 F.3d 446, 454 (7th Cir. 1997) and cases cited there). But courts are not required to do so (see

---

[10] 725 ILCS 5/107-2(1)(a) specifically authorizes arrests conducted pursuant to an arrest warrant, so that there is no question that the second Trigg factor is satisfied here.

id., also citing cases), for "there are some cases 'in which the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness and comity--will point to federal decision of the state-law claims on the merits'" (id., quoting <u>Wright v. Associated Ins. Cos.</u>, 29 F.3d 1244, 1251 (7th Cir. 1994)).

This case presents just such an exception. No useful purpose would be served by eschewing jurisdiction over the remaining claims, given the ease of making those determinations. Additionally, in light of the poverty of Wash's claims, this Court is loath to require Frascone and Village to face the possibility of having to defend the bootless new action that could be filed in state court if a purely procedural dismissal were to be entered. This opinion therefore turns to a resolution of those claims.

<u>Malicious Prosecution</u>

Complaint Count II sounds in malicious prosecution. To establish a claim for malicious prosecution under Illinois law, a plaintiff must show [11] (1) that the defendant in the malicious prosecution action brought an earlier action against him maliciously and without probable cause, (2) that the previous action was terminated in his favor and (3) that he suffered some

---

[11] For Rule 56 purposes that means only the need to show a genuine issue of material fact as to each of the elements of such a claim.

"special injury" or damage beyond the usual expense, time or annoyance attributable to defending a lawsuit (Velez v. Avis Rent A Car Sys., Inc., 308 Ill.App.3d 923, 926, 721 N.E.2d 652, 654 (1st Dist. 1999)). Because this opinion has already held that both actions brought against Wash were supported by probable cause, Frascone and Village are entitled to summary judgment on Count II as well.[12]

## Abuse of Process and Retaliatory Prosecution

Count III targets Frascone and Village for alleged abuse of process and retaliatory prosecution. Those claims are predicated on his allegations that on January 8, 1999 Frascone arrested and then jailed Wash without allowing him to place a phone call, all with the ulterior motive of causing Wash to lose his probationary job as a correctional officer.

As to claims of that nature, Evans v. West, 935 F.2d 922, 923 (7th Cir. 1991), quoting McGrew v. Heinold Commodities, Inc., 147 Ill. App.3d 104, 111, 497 N.E.2d 424, 429 (1st Dist. 1986) teaches:

> Under Illinois law, a plaintiff pleading abuse of process must establish the existence of both "an ulterior purpose or motive for the use of regular court process" and "an act in the use of process not proper in the regular prosecution of a suit."

---

[12] Because any potential liability for Village would derive from Frascone's actions, it necessarily follows that a summary judgment in Frascone's favor exonerates Village as well (see 745 ILCS 10/2-109). So this opinion will continue to omit separate treatment of the two unless circumstances dictate otherwise.

But where a plaintiff suffers no damages other than those necessarily incident to the defense of a lawsuit, no claim lies even if the action was instituted for improper motives (see <u>Central States, S.E. & S.W. Areas Pension Fund v. Wintz Parcel Drivers, Inc.</u>, No. 89 C 7641, 1990 WL 19913, at *1 (N.D. Ill. Feb. 21), applying Illinois law and citing <u>Barrett v. Baylor</u>, 457 F.2d 119, 123 (7th Cir. 1972) to the identical effect).

Here there is an obvious dispute as to whether Frascone had ulterior motives for the Wash arrest, but Wash's version (even though unsupported in evidentiary terms, rather than his mere ipse dixit) will be accepted arguendo. It is also questionable whether Wash can satisfy the second element identified in <u>Evans</u>, because on Wash's own assertion Frascone didn't allow the phone call because he was arranging for a lineup (Frascone rejects the asserted denial of the phone call, but again Wash's version will be credited), and that could well qualify as "proper in the regular prosecution of a suit."

None of that makes a difference, though--for even if Wash's allegations about Frascone's ulterior motives are credited, and even if it is assumed that Frascone's denial of a phone call to Wash would constitute an improper act, Wash has admitted that the termination and his arrest were not causally related (see F-V. St. ¶¶63, 64; W. St. ¶¶63, 64), so that he suffered no injury. No harm, no foul: Count III must be and is dismissed as well.

## Tortious Interference with Contractual Employment

Count IV is styled as an action for "tortious interference with contractual employment." There Wash essentially repeats the same allegations as in Count III. Despite the label that Wash attaches to Count IV, inducing the cancellation of an at-will contract constitutes at most interference with a prospective economic advantage rather than interference with contractual relations (Prudential Ins. Co. of Am. v. Sipula, 776 F.2d 157, 162 (7th Cir. 1985)). And because he was hired on a probationary basis, Wash was indeed an at-will employee (F. St. ¶¶57-58).

To prevail on such a tortious interference claim, a plaintiff must show (1) plaintiff's reasonable expectation of entering into a valid business relationship, (2) defendant's knowledge of that expectancy, (3) defendant's purposeful interference that prevents that legitimate expectancy from ripening into a valid business relationship and (4) damages to plaintiff resulting from such interference (Dowd & Dowd, Ltd. v. Gleason, 181 Ill.2d 460, 484, 693 N.E.2d 358, 370 (1998)). Here, even on the highly dubious assumption that Wash could establish the first three elements of that claim, the already-noted fact that his arrest and his termination were not causally related scotches the fourth element. Count IV must be dismissed as well.

## Assault and Battery

Wash's final claim--his Count V--is for assault and battery.

19

Although Wash himself never specifies that basis of that claim, Frascone and Village have pinpointed its only potential bases (F-V St. ¶44, internal record citations omitted):

> Robert Wash testified that any claims for excessive force arose from two occasions. The first occurred when he was placed in the squad car on November 17, 1998 after the discharge of the firearm incident. He complained about the handcuffs being too tight. The other occasion occurred on December 2, 1998 when Robert Frascone asked him to stand up and then spun him around on the wall and searched him. Those were the only two occasions of excessive force that he experienced.

<u>Smith v. City of Chicago</u>, 242 F.3d 737, 744 (7th Cir. 2001) has recently set out the components of a battery claim under Illinois law:

> A battery occurs when one "intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a). A public employee is immune from liability while enforcing the law unless their acts are willful and wanton. <u>See</u> 745 ILCS 10/2-202. Conduct is willful and wanton when it "shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210.

And <u>Parrish by Bowker v. Donahue</u>, 110 Ill. App.3d 1081, 1083, 443 N.E.2d 786, 788 (3d Dist. 1982) defines the tort of assault as "an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented."

To view the November 17 handcuffing in those terms, Frascone was not even present during that episode. Nor does Wash provide any rationale for holding Village accountable for that handcuffing, even wholly apart from the absence of any showing that it amounted to willful and wanton conduct. Accordingly, any claim based on the November 17 handcuffing must be dismissed.

Finally, as to the December 2 arrest, nothing in the record would support a reasonable finding that Frascone's actions were willful and wanton--a fatal flaw as to both a battery claim and an assault claim. <u>Smith</u>, 242 F.3d at 744 has dealt with a materially more forceful arrest and has reached a like result, upholding a summary judgment in favor of the defendant officer.

## Conclusion

There are no genuine material issues of fact with respect to any of Wash's claims, and Frascone and Village are entitled to a judgment as a matter of law in all respects. This action is dismissed with prejudice in its entirety.

Milton I. Shadur
Senior United States District Judge

Date: September 5, 2001